# UNITED STATES DISTRICT COURT
# DISTRICT OF MAINE

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| v. ) | Docket No. 2:16-cr-00053-NT |
| ) | |
| DAVID THURLOW, ) | |
| ) | |
| Defendant. ) | |

## ORDER ON DEFENDANT'S MOTION
## TO RECONSIDER MOTION TO REDUCE SENTENCE

Before me is Defendant David Thurlow's motion (ECF No. 119) to reconsider his motion for compassionate release (ECF No. 104). For the reasons stated below, Mr. Thurlow's motion is **DENIED**.

### BACKGROUND

Mr. Thurlow is currently thirty-four years old and imprisoned at FTC Oklahoma City. Inmate Profile (ECF No. 128-2). On September 29, 2016, Judge Hornby sentenced him to ten years imprisonment based on four counts of distribution of fentanyl. Judgment (ECF No. 30). Mr. Thurlow then appealed, Notice of Appeal (ECF No. 40), but the First Circuit affirmed his sentence on May 16, 2018, J. of USCA (ECF No. 51).

A year later, on May 13, 2019, Mr. Thurlow filed a motion to vacate his sentence pursuant to 28 U.S.C. § 2255. Mot. to Vacate, Set Aside, or Correct Sentence, Pursuant to 28 U.S.C. § 2255 (ECF No. 54). This Court denied that motion, Order Affirming Recommended Decision of Magistrate Judge (ECF No. 93), and Mr.

Thurlow appealed. Notice of Appeal (ECF No. 94). On October 13, 2020, that appeal, too, was denied. J. of USCA (ECF No. 98).

Mr. Thurlow filed a motion for compassionate release on December 10, 2020. Mot. for Order Reducing Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) ("**First Mot.**") (ECF No. 100). He argued that his circumstances were extraordinary and compelling because of the unexpected death of his children's mother in 2017.[1] First Mot. 1. Judge Hornby denied the motion because the children's grandmother was caring for them. Order on Mot. to Reduce Sentence 3 (ECF No. 102).

On September 23, 2021, the Court received Mr. Thurlow's second motion for compassionate release. Mot. for an Order Reducing Sentence Pursuant to 18 U.S.C. §3582(c)(1)(A)(i) ("**Second Mot.**") (ECF No. 104). Mr. Thurlow again argued that his circumstances were extraordinary and compelling because of the death of his children's mother but added that the grandmother was no longer able to care for the children due to her age and financial situation. Second Mot. 8–9. Judge Hornby found that Thurlow "met the 'extraordinary and compelling reasons' requirement" for motions for compassionate release. Order on Mot. to Reduce Sentence ("**Dec. 2021 Order**") 4 (ECF No. 116). However, he denied the motion because he found that Mr. Thurlow remained a danger to the community. Dec. 2021 Order 6.

As of today, Mr. Thurlow has served about seven years of his sentence and has a projected release date of January 11, 2025. Sentence Monitoring Computation Data

---

[1] Mr. Thurlow is the biological father of one child and considers the woman's other son his child, too. Order on Mot. to Reduce Sentence 2 (ECF No. 116).

(ECF No. 128-4). In his current motion, Mr. Thurlow asks me to reconsider the previous denial of his second motion for compassionate release. Mot. for Appointment of Counsel[,] Mot. to Reconsider - ECF 104[,] ECF 104 – Mot. to Reduce Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) ("**Mot. to Reconsider**") 1 (ECF No. 119). He argues that his circumstances are extraordinary and compelling for the reasons stated in his second motion for compassionate release and because of new circumstances involving his youngest child with another woman. Mot. to Reconsider 4–5. He explains that his youngest child was taken into state custody after his caregiver placed him in dangerous situations. Mot. to Reconsider 4. Due to this situation, if Mr. Thurlow cannot find a caregiver or get released to become the caregiver for his youngest son, the State may terminate his parental rights.[2] Mot. to Reconsider 7.

---

[2] Based on the most recent information provided by the parties, the State was holding a Jeopardy Petition hearing about Mr. Thurlow's minor son on March 7, 2023. Def.'s Suppl. Mot. to Def.'s Pro-Se Mot. to Reconsider-ECF 104 Mot. to Reduce Sentence ("**Def.'s Suppl. Mot.**") 1 (ECF No. 126). The State explained that when child abuse or neglect is alleged, a Jeopardy Order is first sought against all legal guardians. Gov't's Resp. in Opp'n to Def.'s Mot. to Reconsider His Petition for Compassionate Release ("**Gov't's Resp.**") 12 (ECF No. 128). A "Jeopardy Order identifies the cause(s) of jeopardy and then set[s] forth what services are needed to alleviate jeopardy." Gov't's Resp. 12. After a Jeopardy Petition hearing, there is a Cease Reunification Hearing. Def.'s Suppl. Mot. 1. The goal in all child protective matters "is to attain permanency for the children in one year." Gov't's Resp. 12. If a permanent home for the child, preferably reunification with a parent, is unattainable, the State may then seek to terminate parental rights so the child may be adopted. Gov't's Resp. 12. This termination petition is usually filed around six months after the Jeopardy Petition hearing, and a hearing to terminate the parental rights must occur within three months after the termination petition is filed. Def.'s Suppl. Mot. 1.

The attorney representing Mr. Thurlow in the child protective case involving his son submitted a letter, in which she states that Mr. Thurlow has agreed to a jeopardy finding because he has not had an opportunity to establish a relationship with his youngest son while in prison and "is not in a position to provide him with a safe and secure home at this time." Additional Attachs. (ECF No. 127). According to this attorney, Mr. Thurlow is willing to work with Child Protective Services in the hopes of reuniting with his son, and the State is giving him "a limited amount of time" to complete certain requirements before it files any petition to terminate his parental rights. Additional Attachs.

3

## LEGAL STANDARD

I may reduce a term of imprisonment under 18 U.S.C. § 3582(c)(1)(A)(i) upon a prisoner's motion. Before a prisoner can seek compassionate release in the courts, he must first exhaust his administrative remedies. *See* 18 U.S.C. § 3582(c)(1)(A); *United States v. Ruvalcaba*, 26 F.4th 14, 18 (1st Cir. 2022). If the exhaustion requirement is met, to grant the motion, I must also find that the defendant has presented an "extraordinary and compelling" reason warranting relief based on a holistic review of his circumstances and that the reduction is consistent with the Sentencing Commission's policy statements[3] and any applicable factors in 18 U.S.C. § 3553(a). *See* 18 U.S.C. §§ 3582(a), (c)(1)(A); *Ruvalcaba*, 26 F.4th at 18–19. The section 3553(a) factors include the need for the sentence "to protect the public from further crimes of the defendant." 18 U.S.C. 3553(a)(2)(C).

---

[3]  In December of 2018, Congress enacted the First Step Act which, among other things, amended section 3582 to allow inmates, in addition to the Director of the Bureau of Prisons, to bring motions for modification of sentence directly to the district courts. *See* First Step Act of 2018, Pub. L. No. 115-391, § 603(b), 132 Stat. 5194, 5239 (2018) (codified at 18 U.S.C. § 3582(c)(1)(A)). The United States Sentencing Commission last updated its policy statement on "extraordinary and compelling" circumstances in November of 2018, before Congress passed the First Step Act. U.S. Sent'g Guidelines Manual § 1B1.13 cmt. 1 (U.S. Sent'g Comm'n 2004); *see United States v. Ruvalcaba*, 26 F.4th 14, 20 (1st Cir. 2022). The text of the Sentencing Commission's current policy statement provides that a sentence reduction based on "extraordinary and compelling reasons" only applies to motions brought by the Director of the Bureau of Prisons, not prisoner-initiated motions. *See* U.S. Sent'g Guidelines Manual § 1B1.13; *Ruvalcaba*, 26 F.4th at 20. But, in *Ruvalcaba*, the First Circuit explained that "a district court is not constrained by the existing policy statement on compassionate release when adjudicating a motion brought by a prisoner." 26 F.4th at 21.

In April of 2023, the Sentencing Commission submitted proposed amendments to the policy statements, including expressly making them applicable to prisoner-filed motions. *See* Sentencing Guidelines for United States Courts, 88 Fed. Reg. 28254 (May 3, 2023). If Congress does not act to the contrary, the amendments will become effective on November 1, 2023. *Id.* at 28254. Although the amended policy statement is not currently active, it provides helpful guidance on what the Commission would likely consider an extraordinary and compelling reason for a sentence reduction. *See United States v. Jenkins*, No. 16-CR-391-1 (JMF), 2023 WL 3479525, at *1 n.2 (S.D.N.Y. May 16, 2023). As relevant here, the amendment would still consider "the death or incapacitation of the caregiver of the defendant's minor child" to be an extraordinary and compelling reason. *See* Sentencing Guidelines for United States Courts, 88 Fed. Reg. at 28255.

Mr. Thurlow asserts that he met the exhaustion requirement, and the Government does not argue otherwise. *See* Mot. to Reconsider 11; Gov't's Resp. in Opp'n to Def.'s Mot. to Reconsider His Pet. for Compassionate Release ("**Gov't's Resp.**") 10 (ECF No. 128); *see* Administrative Request to BOP (ECF No. 119-2). Having met this requirement, Mr. Thurlow's motion depends on whether there are extraordinary and compelling reasons for a sentence reduction that accord with the section 3553(a) factors.

## DISCUSSION

Mr. Thurlow seeks compassionate release because (1) the mother of one of his minor children died in 2017 and the child's grandmother is no longer able to care for him; and (2) his youngest child has been removed from his caregiver and Mr. Thurlow's parental rights may be terminated. Mot. to Reconsider 4–5. Judge Hornby previously found that the first circumstance met the extraordinary and compelling bar, and I see no reason to revisit that finding. But Judge Hornby also concluded that a reduction of sentence was inappropriate because Mr. Thurlow remains a danger to the community.

When considering Mr. Thurlow's second motion for compassionate release a year and a half ago, Judge Hornby wrote:

> I cannot ignore the seriousness of Thurlow's crime, his history, and his risk of recidivism. Thurlow engaged in a serious amount of fentanyl distribution as a manager or supervisor of five or more people. They included his mother, his brother, his then wife, his cousin, and others. PSR ¶ 17. Thurlow engaged in this egregious criminality while he was still under probation for previous state offenses, PSR ¶ 34, hardly a good omen for releasing him now on conditions. His criminal behavior started at age 15 and encompassed forgery, assault, drug possession, and

> driving offenses. PSR ¶¶ 24–33. By the time I sentenced him at age 28, he had accumulated 9 criminal history points and had spent several years in juvenile detention, jail, and state prison. *Id.* But still he continued to break the law. At age 33, Def.'s Reply at 6, Thurlow is young, reducing confidence that he has outgrown his deviant youth, and he has struggled with addiction since age 16, an addiction that, he told the Probation Officer, led to his federal trafficking offense. PSR ¶ 11. Reluctantly, I conclude that Thurlow remains a danger to the community if released now under any conditions of supervision.

Dec. 2021 Order 5–6. Judge Hornby further noted that Mr. Thurlow was in line to be admitted into the Bureau of Prison's Residential Drug Abuse Program (the "**RDAP**") and "[w]hether successful completion of that program can change my analysis remains to be seen." Dec. 2021 Order 6–7.

Since the time of Judge Hornby's order, Mr. Thurlow has been involved in three reported disciplinary incidents: possessing a prison-made weapon in July of 2022; fighting with another inmate in August of 2022; and interfering with a security device in September of 2022. Inmate Discipline Data 1–2 (ECF No. 128-3). The recency and severity of these disciplinary problems further support Judge Hornby's conclusion that Mr. Thurlow remains a danger to the public.

In addition, Mr. Thurlow still has not completed the RDAP. He started it on August 12, 2022, but he was assaulted and transferred to FCI Beaumont on October 26, 2022. Mot. to Reconsider 10–11. Shortly after his transfer, he started the RDAP again. Mot. to Reconsider 11. Mr. Thurlow was again assaulted and was transferred to FTC Oklahoma City. Mot. to Reconsider 11; Gov't's Resp. 12. I applaud Mr. Thurlow's commitment to receiving treatment and note that the difficulties he faced in completing the RDAP appear to be no fault of his own. However, as Judge Hornby

previously noted, without completing the program, Mr. Thurlow is not an appropriate candidate for compassionate release.[4] *See* Dec. 2021 Order 6–7.

I want to recognize that Mr. Thurlow has made progress. As Judge Hornby noted, letters written on Mr. Thurlow's behalf describe him as a good father. Dec. 2021 Order 5; *see* Attachs. in Supp. of Mot. 2, 4 (ECF No. 104-2). In prison, Mr. Thurlow has taught other inmates, worked in the prison's HVAC facilities department, and completed numerous programs, including the prerequisite program to the RDAP and parenting classes. Dec. 2021 Order 5; Individualized Needs Plan (ECF No. 128-1). I encourage Mr. Thurlow to stick to this path and continue working towards completing the RDAP. Ultimately, however, I find that Mr. Thurlow is not eligible for compassionate release because of the risks he still poses to the public.

## CONCLUSION

For the reasons stated above, the Court **DENIES** Mr. Thurlow's Motion to Reconsider (ECF No. 119).

SO ORDERED.

/s/ Nancy Torresen
United States District Judge

---

[4] Mr. Thurlow argues that he should still be granted release even though he has not completed the Residential Drug Abuse Program because the risk he poses to the community is mainly associated with drugs and such a risk can be mitigated with conditions of release. Mot. to Reconsider at 3–4 (ECF No. 119). In support of this, Mr. Thurlow points to *United States v. Kissh*, No. 2:19-cr-00059-NT-1, 2021 WL 127128 (D. Me. Jan. 12, 2021). Mr. Kissh's case is, however, distinguishable. Mr. Kissh had multiple chronic and severe health conditions, and the numbers of COVID-19 cases in his facility were increasing dramatically at the time I decided his motion. In fact, Mr. Kissh's health was so compromised that he died within two weeks of being released.

Dated this 8th day of June, 2023.